UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MONARCHY RUSH NO MORE RV RESORT, LLC, a Nevada Corporation;<br><br>       Plaintiff,<br><br>  vs.<br><br>BLACK HILLS TITLE, INC., a South Dakota Corporation;<br><br>       Defendant and Third Party Plaintiff,<br><br>  vs.<br><br>ECM PARKS AND RECREATION, INC.;<br><br>       Third Party Defendant. | **5:24-CV-05035-CBK**<br><br><br>**MEMORANDUM OPINION**<br>**AND ORDER** |

This case arises out of a written agreement dated May 22, 2022, by which plaintiff (even though apparently not in existence at that time) was to purchase all stock in ECM Parks and Recreation, Inc ("ECM"), the owner and operator of a campground known as Rush No More near Sturgis, South Dakota. The agreement was clearly a stock purchase agreement rather than a contract to purchase the assets of ECM. All stock of ECM was owned by either Edward C. Miller, an attorney from South Dakota, or the 401(k) plan of ECM or both Miller and the plan. Both Mr. Miller and the 401(k) plan were designated as sellers of the corporate stock. There is a great deal of difference between an agreement to buy assets and an agreement to purchase stock. There are different tax consequences to parties dealing with stock transfers as distinguished from dealing with sales of the assets of the corporation. Buying assets gives the buyer a new deprecation schedule whereas a buyer buying stock takes the depreciated assets. Any attorney should understand that. Not only is Mr. Miller an attorney but the person signing the original

contract (Gene Chavez) as well as subsequent contracts on behalf of the buyer, i.e. the plaintiff here, is also an attorney from New Mexico.

The purchase price was $5,700,000. Plaintiff paid earnest money of $57,000 in escrow to Black Hills Title, Inc. ("Black Hills"), a South Dakota corporation engaged in the business of handling closings of sales of real estate and obtaining policies of title insurance. Black Hills deposited the money into its trust account at Pioneer Bank & Trust, ("Bank"), a bank in South Dakota. The closing deadline of July 15, 2022, was agreed upon. It is undisputed that the sale did not "close", even after the closing date had been extended in writing several times by the parties. It is also undisputed that Black Hills took $57,000 from its escrow account and paid that amount to ECM when the sale fell through.

Plaintiff sued the Bank on November 19, 2022, in a federal court in New Mexico and the suit was dismissed by the federal court for lack of jurisdiction over the Bank. Plaintiff then sued the Bank and Black Hills in the present action, alleging breach of fiduciary duty, violation of the Unfair Trade Practices Act, negligence, negligent misrepresentation, fraud, civil conspiracy, conversion and promissory estoppel. The plaintiff did not sue ECM, the entity that received the earnest money, Mr. Miller or the 401(k) plan of ECM. This would appear to be a violation of Fed. Civ. R. 19(c) but the rule is not jurisdictional. The Bank filed an Answer and Counterclaim but the parties later stipulated to the dismissal of any claim against the Bank. Black Hills filed an Answer and later a Third Party Complaint against ECM.

Black Hills filed a motion for summary judgment and a supporting memorandum of law. ECM joined in the motion and briefs. In response to the motion for summary judgment, plaintiff conceded that all claims other than for breach of fiduciary duty are unsupported and thus are waived. The only remaining claim of plaintiff is for breach of fiduciary duty against Black Hills.

Black Hills filed a statement of 35 undisputed material facts. Plaintiff filed a response wherein plaintiff did not dispute any of those facts. Plaintiff did add additional statements to five of the plaintiff's statement of undisputed material facts, some of which cited an affidavit. Under the District of South Dakota's Civil Local Rules of Practice, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. L.R.

2

56.1(D).  Plaintiff did not object to any of Black Hill's statement of material facts.  This Court is entitled to rely upon the facts set forth by Black Hills and joined in by ECM.  "A party opposing a motion for summary judgment must identify any material facts on which there exists a genuine material issue to be tried."  D.S.D. Civ. LR 56.1(B).  Plaintiff did not file any such statement.  There is no genuine issue of any material fact in this case.

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  Johnson v. Schulte Hosp. Grp., Inc., 66 F.4th 1110, 1113–14 (8th Cir. 2023) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011)), Fed. R. Civ. P. 56(c)(2).  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  "A genuine dispute over a fact exists only when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Arnett v. Norris, 160 F.4th 921, 925 (8th Cir. 2025) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S.Ct. at 2510)).  Factual disputes are viewed in the light most favorable to the non-moving party, but "only if there is a 'genuine' dispute as to those facts."  Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009).

> The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d (1986).  The non-movant "must show there is sufficient evidence to support a jury verdict in [its] favor." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).  "Factual disputes that are irrelevant or unnecessary will not be counted," *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, and a mere scintilla of evidence supporting the nonmovant's position will not fulfill the non-movant's burden, *id.* at 252, 106 S.Ct. 2505.

Uhiren v. Bristol-Myers Squibb Co., Inc., 346 F.3d 824, 827 (8th Cir. 2003).

In a case where jurisdiction is founded upon diversity of citizenship, as in the present case, the district court applies the substantive law of the forum state.  MBI Oil & Gas, LLC v. Royalty Interests. Partnership, LP, 146 F.4th 650, 655 (8th Cir. 2025).

3

"To recover for breach of fiduciary duty, a plaintiff must prove: (1) that the defendant was acting as plaintiff's fiduciary; (2) that the defendant breached a fiduciary duty to plaintiff; (3) that plaintiff incurred damages; and (4) that the defendant's breach of the fiduciary duty was a cause of plaintiff's damages." *Redlin v. First Interstate Bank*, 2 N.W.3d 729, 734 (S.D. 2024) (quoting *Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 772 (S.D. 2002)). "It is generally accepted that an escrow agent is the agent and fiduciary of all parties to an escrow agreement." *Wandler v. Lewis*, 567 N.W.2d 377, 384 (S.D. 1997) (quoting *Am. State Bank v. Adkins*, 458 N.W.2d 807, 810 S.D. 1990)). An escrow agent has a fiduciary duty "to act scrupulously and honestly in carrying out his duties." *Adkins*, 458 N.W.2d at 811.

Cengiz v. Huron Title Co., 2024 WL 1744297, at *7 (D.S.D. Apr. 22, 2024) (Schreier, District Judge).

For what it is worth, I know from my 30 years of law practice and more than 30 years on the federal bench that the vast majority of contracts, especially those involving a great deal of money, provide that the purchase is contingent upon the buyer acting in good faith to obtain financing. There is no such provision here. The matter of financing, in the absence of fraud, has nothing to do with this lawsuit. There is no evidence of any fraud. This is a very "strange" contract, to say the least. There was no mention in the contract of ECM, the owner of the assets and the operator of the campground. ECM was not required to do anything. The agreement allowed the buyer to inspect <u>seller's</u> records to conduct due diligence. To exercise due diligence, a buyer of a business would want to know about receipts and expenses, including occupancy rates. Any such disclosures were solely required from Mr. Miller personally and the 401(k) plan.

Paragraph 14(b) of the contract provides: "There shall have been no material adverse change in the condition of the Purchaser." There is nothing in the record as to the financial condition of the plaintiff. The contract does require that any notices shall be in writing. There is nothing in the record to show that plaintiff ever gave any notice in writing, including refusal to close the sale or any reasons why the purchaser claimed that sellers had not complied with any contractual obligation. The contract tells us that failure to so communicate "shall be deemed acceptance of the same." Paragraph 18 requires the buyer (plaintiff) to indemnify the seller for attorney fees and costs if the sale did not close. Another strange provision of the

contract (paragraph 13(e)) recites that the purchaser "has retained local and other appropriate counsel to represent Seller's interests under this Agreement." Plaintiff did not obtain local counsel to represent either party.

Plaintiff's original complaint (filed May 30, 2024) (in paragraph 11) alleged that the closing did not take place "because the seller's (Miller and the 401(K) plan?) tax returns showed a significant change from the previous year and said taxed (sic) were delivered 10 days prior to closing."

There is nothing in the record that would even suggest that the actual sellers did not voluntarily furnish and make available all books and records of ECM with the sole exception that plaintiff claims the sale did not close because ECM's corporate tax return (exhibit 5 from the deposition testimony of Mr. Chavez, plaintiff's agent) showed a downturn in campground business from the previous fiscal year. Plaintiff claims the tax return was furnished too close to the often delayed closing date and the tax return caused a lack of financing. There is no showing by plaintiff of the source of any financing sought or even any claim that alternative financing had ever been sought. As a matter of law, ECM had no contractual obligation to furnish any tax return. As a matter of fact, it is undisputed that ECM furnished every corporate tax return it had.

It is important to note that ECM's fiscal year ended on September 30, 2022. Sellers furnished the tax return to plaintiff on October 12, 2022, three months earlier than the required filing date for the IRS. The complaint about the tax return is bogus and is not material. Closing was not contingent upon any tax return being provided. Nothing could be provided as to ECM until its fiscal year had ended and it had time to have a tax return even prepared, much less filed. Something else tells us that the claim is bogus. The original stock sale agreement and two supplemental agreements (delaying closings) called for the sale to close before the end of the fiscal year of ECM when it would have been impossible to see any to-be filed tax return. As already noted, the original purchase agreement called for a closing date of July 15, 2022. It also provided, in clear and unambiguous language that if the sale did not close by the closing deadline, seller was entitled to retain the earnest money deposit.

5

The original agreement was amended and superseded on July 25, 2022, setting a new closing date of August 19, 2022. On August 18, 2022, the agreement was again amended to extend the closing date to September 12, 2022. This amended agreement included an agreement that purchaser had conducted due diligence and the earnest money had become irrevocable and would be payable to seller if the sale was not completed by the September closing date.

On September 7, 2022, the agreement was again amended, this time extending closing to October 19, 2022. This third amended agreement again provided a provision that, if the buyer timely completes the closing, the earnest money shall be applied to the purchase price. If buyer does not timely complete the closing, the earnest money will be forfeited. The September 7, 2022, amended agreement set forth that all prior terms remained in force, including the August amendment that acknowledged that all contingencies had been met, which included having completed due diligence.

Closing did not occur on October 19, 2022, or any other date. In accordance with the third amended purchase agreement, Black Hills released the earnest money to ECM. As a technical matter, the earnest money should probably have been paid directly to Miller and the 401(k) plan as the actual sellers but that is of no concern to plaintiff and is immaterial.

Plaintiff contends that Black Hills breached its fiduciary duty to plaintiff by failing to return the earnest money to plaintiff and instead released the earnest money to seller. There is no genuine issue of material fact that the September third amended stock purchase agreement provided:

> If buyer fails to comply with these terms and close by October 19, 2022 the Earnest Money Deposit will be forfeited.

The September 7, 2022, third amended agreement incorporated the following language from the August 18, 2022, second amended stock purchase agreement:

> It is agreed by the parties that all due diligence has been completed by Purchaser and all contingencies have been met. The Earnest Money Deposit ($57,000.00) has become irrevocable. Failure by the purchaser to complete the purchase [by the closing date] will result in immediate payment of Earnest Money Deposit to Seller.

There is no genuine issue of material fact that plaintiff, as buyer, did not complete the purchase by the closing date. There is no dispute that the COVID-19 public health emergency during the prior fiscal year resulted in increased revenue for the campground, arguably because outdoor activities such as camping were not restricted by the pandemic. Apparently, that increased revenue did not follow during the summer 2022 camping season, resulting in a lower profit during the 2021-22 fiscal year. Apparently, the purchase of the stock did not close because plaintiff's lender would not lend the entire purchase price to plaintiff to complete the purchase. The two forgoing sentences are actually of no materiality as to this case.

Gene Chavez, as agent for plaintiff purchaser, signed the stock purchase agreement and the amended agreements. He testified under oath at his deposition that, as of August 19, 2022, the earnest money deposit had become irrevocable and he understood plaintiff had no further legal right to the deposit. Chavez testified that all contingencies of the stock purchase agreement(s) had been met and that he, an attorney licensed in the state of New Mexico, understood that if the transaction did not close, the earnest money would be released to seller. After his sworn testimony, Chavez set forth in his affidavit in resistance to summary judgment that seller did not produce the tax return for the previous year until one week prior to closing and that such tax return "caused problems with the closing and final underwriting." Chavez suggests that buyer "rejected" the purchase agreement. That is not accurate. Buyer executed the last two stock purchase agreements acknowledging that there were no contingencies to closing. Buyer did not reject the purchase agreement but instead failed to comply with the closing term – which term was a "time is of the essence" term. Chavez sets forth in his affidavit that "sellers willing (sic) and knowingly withheld that tax extension (returns) because they knew the most recent tax returns would show a large decrease in revenue that would decrease the value of the park and negatively affect closing." That statement has no basis in fact and is not supported by the record. In fact, it is contrary to the undisputed record. I have already noted that the tax return was not filed earlier because the fiscal year did not end until September 30, 2022. In fact, the original stock purchase agreement contemplated closing on July 15, 2022, over two months prior to the end of the fiscal year. Further, contrary to Chavez' affidavit that "Plaintiff at all times indicated that the purchase of the park was contingent up

7

(sic) obtaining bank financing," the closing was never contingent upon buyer obtaining financing in connection with the written stock purchase agreement as well as the amendments. There is no genuine issue that failure to close was not due to any breach by sellers or, for that matte,r by ECM.

Mr. Chavez and plaintiff attempt by virtue of the Chavez affidavit to change or at least substantially "water down" his deposition testimony. This is not to be permitted. His testimony is "fatal" as to claims to the contrary. South Dakota law is clear in that regard. "Our oft-quoted rule about contrary positions like this states that 'a party cannot assert a better version of the facts than his prior testimony and cannot claim a material issue of fact which assumes a conclusion contrary to his own testimony.'" Trigger Energy Holdings, LLC v. Stevens, 2025 SD 72, ¶ 57, 29 NW3d 900, 916 (SD December 22, 2025) (citation modified) (quoting St. Pierre v. State ex rel. S.D. Real Est. Comm'n, 2012 SD 25, ¶ 23, 813 NW2d 151, 158). The Court takes a very dim view of such conduct by an attorney.

There is another matter that concerns the Court. Monarchy Rush No More RV Resort, LLC filed articles of organization September 9, 2022, with the Nevada Secretary of State. https://esos.nv.gov/entitySearch/BusinessInformation, visited February 26, 2026. This date is troubling because the non-existent LLC entered into a purchase agreement four months earlier on May 17, 2022. The managing member of Monarchy Rush No More RV Resort, LLC was listed as Monarchy Real Estate Acquisitions & Holdings LLC with an address in Albuquerque, New Mexico. Monarchy Rush No More RV Resort, LLC's entity status has been revoked by the Nevada Secretary of State. As of May 30, 2024, when the complaint was filed in this case, plaintiff represented that the plaintiff LLC was doing business in the State of New Mexico. Plaintiff filed a corporate disclosure statement in this case on June 14, 2024, stating that the LLC has one member, Gene Chavez, a citizen of New Mexico. The records of the New Mexico Secretary of State do not list Monarchy Rush No More as having ever been a domestic LLC or as having ever registered as a foreign LLC. https://enterprise.sos.nm.gov/search/business visited March 2, 2026. The original purchase agreement dated May 17, 2022, set forth that any notice to the "purchaser" shall be addressed to All States Equity Group LLC, in conjunction with Monarchy Real Estate Acquisitions & Holdings, LLC with no mention of

notice to any entity known as Monarchy Rush No More RV Resort, LLC.  Gene Chavez signed the original purchase agreement by Monarchy Rush No More RV Resort, LLC, but did not indicate his title.  On September 10, 2022, Gene Chavez sent an email to Mr. Miller that stated "now that we are on the home stretch and title was ordered, etc, we have to finalize our LLC." It is clear that the named plaintiff was not a registered business entity when the original purchase agreement as well as the amended purchase agreements were executed.

The Court finds and decides that there are no genuine issues of material fact and that plaintiff cannot, as a matter of law, prevail on its breach of fiduciary duty claim against Black Hills.  As a result, the third party action becomes moot.

In an earlier preliminary draft of this opinion, I stated that attorney fees should be awarded because paragraph 18 of the original contract required purchaser to fully indemnify seller for attorney fees and other items.  There is no evidence that Miller and his 401(k) plan suffered any such damages.  I have changed my mind.  We will follow the well known American Plan as to the award of attorney fees and none will be awarded.  I apologize for causing additional work by the attorneys for Black Hills and ECM, neither of which have any contractual right to attorney fees.

Now, therefore,

IT IS ORDERED that Black Hills' motion, Doc. 44, for summary judgment is granted and this action is dismissed with prejudice.  Also, the third party action against ECM is dismissed.  Costs shall be taxed by the Clerk in favor of Black Hills and against plaintiff.  No costs shall be taxed in connection with the third party action. .

DATED this _7th_ day of May, 2026.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

9